## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JARNELL WILLIS,**
Individually,

      Plaintiff,

                                    CASE NO.

**v.**

                                    **JURY DEMAND**

**LOOMIS ARMORED US, LLC,**
A Foreign Profit Corporation,

      Defendant.
_____/

**WARREN D. ASTBURY**
**ASTBURY LAW, PLLC**
Michigan Bar # P82416
Attorney for Plaintiff
3910 Telegraph Road
Suite 204
Bloomfield Williss, MI 48302
Tel: (313) 701-2448
warren@astburylegal.com

_____

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

    Plaintiff JARNELL WILLIS ("Willis") brings this action and Complaint for damages and demand for jury trial against Defendant LOOMIS ARMORED US, LLC. ("Loomis") and, in support thereof, alleges as follows:

## <u>PARTIES</u>

    1.    Plaintiff, Willis, is a citizen of the State of Michigan, residing in Oakland County.

1

2.     At all times material hereto, Plaintiff was an "employee" of Loomis within the meaning of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Michigan's Persons with Disabilities Civil Rights Act ("PDCRA").

3.     Defendant Loomis is a Foreign Profit Corporation incorporated in Texas.

4.     Defendant employs more than 15 employees.

5.     At all times material to this action, Defendant was Plaintiff's "employer" within the ADA and the PDCRA.

## **JURISDICTION**

6.     The Court has original jurisdiction over Plaintiff's ADA claim.

7.     This Court has supplemental jurisdiction of Plaintiff's PDCRA claims pursuant to 28 U.S.C. §1367 as these claims are so related to Plaintiff's ADA claim that they form part of the same case or controversy.

8.     This Court has jurisdiction to grant injunctive and declaratory equitable relief as well as damages invoked pursuant to the statutes cited above as well as Ex Parte Young, 209 U.S. 123 (1908) pursuant to Plaintiff's request for prospective injunctive relief, and the authority to grant declaratory relief under the statutes cited above.

2

**VENUE**

9.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred within the Southern Division of the Eastern District of Michigan.

10.     Defendant conducts substantial and not isolated business within the Southern Division of the Eastern District of Michigan.

11.     Defendant has agents and employees in the Southern Division of the Eastern District of Michigan.

12.     Defendant has businesses located in the Southern Division of the Eastern District of Michigan.

**CONDITIONS PRECEDENT**

13.     On June 3, 2024, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

14.     On April 9, 2025, the EEOC issued Plaintiff a Dismissal and Notice of Right to Sue against Defendant with regard to this matter.

15.     Plaintiff files this action within the applicable statute of limitations.

16.     All conditions precedent to this action have been satisfied and/or waived.

## FACTUAL BACKGROUND

17.    Loomis hired Jarnell Willis as an Armed Service Teller on May 15, 2023.

18.    On February 5, 2024, Willis called in sick and was absent from work due to her disabilities, major depressive disorder, generalized anxiety disorder, and panic disorder, which impacted her ability to attend work regularly.

19.    From February 5, 2024, to February 9, 2024, Willis continued to struggle with major depressive disorder, generalized anxiety disorder, and panic disorder, which significantly impacted her ability to maintain regular attendance at work.

20.    On February 9, 2024, Loomis issued Willis a No-Call No-Show Letter for being absent, in violation of Loomis' Attendance Policy, and her separation date was recorded as February 9, 2024.

21.    On February 12, 2024, Willis verbally requested a modified work schedule with every Monday and Friday off due to a personal medical condition.

22.    She informed Loomis that she was seeking treatment and support for her mental health, including attending therapy sessions.

23.     Willis wrote a letter to Loomis addressing her absences, explaining that she had been struggling with depression, which impacted her ability to attend work.

24.     On the same day, Risch informed Willis that she had 16 attendance points before the no-call no-shows and that, according to the new attendance policy, two days of no-call no-shows would result in termination.

25.     On February 21, 2024, Loomis placed Willis on leave and opened an ADA review for her accommodation request.

26.     Loomis sent Willis a letter regarding her disciplinary action review and ADA accommodation.

27.     On March 11, 2024, Willis completed an ADA Medical Verification Form, listing "Major depressive disorder, generalized anxiety disorder, and panic disorder" as her disabilities, and returned it to Emily Huff in Loomis' HR department.

28.     Dayna Fabrey, Willis' therapist, signed the ADA Medical Verification Form.

29.     On March 12, 2024, Loomis approved Willis's ADA accommodation for up to one full absence per week, effective from March 12, 2024, through September 10, 2024.

30.     However, Loomis refused to remove her prior attendance points.

31.    From March 12, 2024, to May 16, 2024, Jaime Horvath, an HR Generalist for Loomis, called Willis' manager after she exercised her accommodation for her disabilities to check on the reason for her absences.

32.    Horvath expressed doubts to Willis' manager that the reason for her absences was valid under her accommodation.

33.    This discouraged Willis from exercising her reasonable accommodation for her disabilities.

34.    On March 25, 2024, Willis exercised her accommodation and was given additional attendance points by Loomis.

35.    On March 28, 2024, after Willis sent an email protesting these attendance points, Loomis agreed to remove the attendance points.

36.    However, in the same email, Loomis warns Willis that using her accommodation in the future could lead to discipline.

37.    On May 6, 2024, Willis called to exercise her reasonable accommodation for her disabilities.

38.    She spoke to Vito Dunson (Branch Oops Manager).

39.    During this conversation, Willis mentioned that she had been in a car accident over the weekend.

40.    She never expressed that the car accident was the reason for her request to take the day off.

41.     Willis was a passenger in a car accident that took place on May 4.

42.     On May 7, 2024, Willis used her paid sick time to get an additional day off to accommodate her disabilities.

43.     Willis had paid sick leave time available to her, as shown by her "Sick Balance."

44.     On this day, she experienced the symptoms of her disabilities, and the effects of the medication she takes for her disabilities could not come to work.

45.     Vito Dunson approved this request.

46.     On May 8, 2024,  Willis returned to work.

47.     She received a communication from Jamie Horvath (HR) stating that she needed documentation from her accident—either a police incident report or a hospital record.

48.     Willis told Horvath she was not hospitalized as a result of her accident.

49.     Willis did not understand why Horvath was making this request.

50.     On May 9, 2024, Willis contacted the Wixom/ Novi police station.

51.    She was told the officer needed approval from a police supervisor before the incident report could be released via the Internet.

52.    On May 16, 2024, Horvath provided Willis with a link to receive the incident report using her Driver's License, as evidenced below.

53.    As Willis was not the vehicle's driver in the accident, her Driver's License number did not yield any police report.

54.    In response to this email, Willis sent Horvath her ADA paperwork to remind her of her disabilities and provide Horvath with medical documentation for her sick day.

55.    On May 17, 2024, Willis was terminated for not providing the necessary documentation for paid sick leave, as detailed in the notice below.

56.    Willis was terminated approximately two months after her accommodation request was made and granted, about 10 days after she exercised the accommodation, and the day after, she reminded Horvath that she used a sick day on May 7 to accommodate her disabilities.

57.    Moreover, Loomis' policy is to terminate employees after 20 attendance points.

58.    As detailed in the letter above, Willis only had 11 attendance points.

59.     Many of these attendance points were accumulated as a result of her disabilities.

60.     An absence is only five attendance points, so even if May 7 were counted as an absence, she would only have 16 attendance points.

61.     Additionally, Loomis violated its own policies regarding sick leave, which Willis still had available to her.

62.     Loomis' policy expressly states that sick days may be used for an "existing health condition including mental...illness...."

63.     Willis informed Loomis on multiple occasions, including on May 7 and again on May 16, that she exercised her sick leave on May 7 to accommodate her disabilities.

64.     Loomis failed to accommodate Willis' disabilities, discriminated against Willis due to her disabilities, and retaliated against Willis for attempting to exercise her reasonable accommodation for her disabilities in violation of the Americans with Disabilities Act, as amended, of 2008, and Michigan's Persons with Disabilities Civil Rights Act of 1976.

## COUNT I - DISCRIMINATION IN VIOLATION OF THE ADA

65.     Plaintiff realleges and reincorporates paragraphs 1-64 as if fully set forth herein.

66.    Plaintiff is a qualified individual with a disability under the ADA, 42 U.S.C. § 12101 *et seq*, in that she suffers from major depressive disorder, generalized anxiety disorder, and panic disorder.

67.    These disabilities impaired her ability to carry out several major life activities, such as concentrating, thinking, and functioning her neurological systems.

68.    Plaintiff was qualified for the positions she held or desired to hold with Defendant.

69.    Plaintiff could perform the essential functions for the positions she either held or desired to hold a position with Defendant, either with or without a reasonable accommodation.

70.    During the time Plaintiff was employed by Defendant, Plaintiff was subjected to disparate treatment and/or discrimination on the basis of her disability and/or disabilities, as set forth herein.

71.    Under the ADA, Defendant was legally obligated to refrain from discriminating against Plaintiff because of her disability and/or disabilities and/or accommodation requests.

72.    Notwithstanding this obligation under the ADA and in willful violation thereof, Defendant discriminated against Plaintiff because of her

disability and/or disabilities, her record of disabilities because it perceived Plaintiff as disabled, and/or her accommodation requests.

73.    Defendant violated the aforementioned ADA by, *inter alia*, the following acts:

a.    Discharging Plaintiff because of her disability and/or disabilities and/or requests for accommodation;

b.    Denying employment opportunities to Plaintiff because of her and/or disabilities and/or requests for accommodation;

c.    Denying Plaintiff's requests for accommodation; and/or

d.    Subjecting Plaintiff to disparate treatment on the basis of her and/or disabilities and/or accommodation requests.

74.    Defendant's discriminatory actions were willful, deliberate, and intentional.

75.    The injuries to Plaintiff that arose as a consequence of Defendant's conduct were foreseeable and intentionally caused by Defendant.

76.    As a direct and proximate result of Defendant's violation of the ADA, Plaintiff suffered economic damages including but not limited to loss of wages, benefits, back pay, front pay, and other expenses.

77.    As a direct and proximate result of Defendant's violation of ADA, Plaintiff has suffered emotional and physical distress, mental and

physical anguish, loss of reputation, humiliation, and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

78.    As a direct, natural, proximate, and foreseeable result of the actions of Defendant, Plaintiff has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

79.    The conduct of Defendant was so willful and wanton and performed with malice or reckless indifference to the statutory rights of Plaintiff that it entitles her to an award of punitive damages against Defendant to deter them and others from such conduct in the future.

80.    Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to the ADA.

81.    Plaintiff, having been discriminated against by Defendant, has suffered irreparable harm for which there is no plain, adequate, or complete remedy at law.

## COUNT II - DISCRIMINATION IN VIOLATION OF THE PDCRA

82.    Plaintiff realleges and reincorporates paragraphs 1-64 as if fully set forth herein.

83.    Plaintiff is a qualified individual with a disability under the PDCRA in that she suffers from major depressive disorder, generalized anxiety disorder, and panic disorder.

84.    These disabilities impaired her ability to carry out several major life activities, such as concentrating, thinking, and functioning her neurological systems.

85.    Plaintiff was qualified for the positions she held or desired to hold with Defendant.

86.    Plaintiff could perform the essential functions for the positions she either held or desired to hold a position with Defendant, either with or without a reasonable accommodation.

87.    During the time Plaintiff was employed by Defendant, Plaintiff was subjected to disparate treatment and/or discrimination on the basis of her disability and/or disabilities, as set forth herein.

88.    Under the PDCRA, Defendant was legally obligated to refrain from discriminating against Plaintiff because of her disability and/or disabilities and/or accommodation requests.

89.    Notwithstanding this obligation under the PDCRA and in willful violation thereof, Defendant discriminated against Plaintiff because of her

disability and/or disabilities, her record of disabilities because it perceived Plaintiff as disabled, and/or her accommodation requests.

90.    Defendant violated the aforementioned PDCRA by, *inter alia*, the following acts:

a.    Discharging Plaintiff because of her disability and/or disabilities and/or requests for accommodation;

b.    Denying employment opportunities to Plaintiff because of her and/or disabilities and/or requests for accommodation;

c.    Denying Plaintiff's requests for accommodation; and/or

d.    Subjecting Plaintiff to disparate treatment on the basis of her and/or disabilities and/or accommodation requests.

91.    Defendant's discriminatory actions were willful, deliberate, and intentional.

92.    The injuries to Plaintiff that arose as a consequence of Defendant's conduct were foreseeable and intentionally caused by Defendant.

93.    As a direct and proximate result of Defendant's violation of the PDCRA, Plaintiff suffered economic damages including but not limited to loss of wages, loss of benefits, back pay, front pay, and other expenses.

94.    As a direct and proximate result of Defendant's violation of PDCRA, Plaintiff has suffered emotional and physical distress, mental and

physical anguish, loss of reputation, humiliation, and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

95.    As a direct, natural, proximate, and foreseeable result of the actions of Defendant, Plaintiff has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

96.    Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to the PDCRA.

97.    Plaintiff, having been discriminated against by Defendant, has suffered irreparable harm for which there is no plain, adequate, or complete remedy at law.

## COUNT III
## RETALIATION IN VIOLATION OF THE ADA

98.    Plaintiff realleges and adopts all pertinent parts of paragraphs 1-64 as if set forth herein.

99.    Plaintiff engaged in a protected activity when she requested a reasonable accommodation for her disabilities.

100.    Beginning shortly after Plaintiff's initial request for a reasonable accommodation for her disabilities and continuing until her termination,

Defendant took adverse employment actions against Plaintiff, including but not limited to:

        a.      Discharging Plaintiff because of her disability and/or disabilities and/or requests for accommodation;

        b.      Denying employment opportunities to Plaintiff because of her and/or disabilities and/or requests for accommodation;

        c.      Denying Plaintiff's requests for accommodation; and/or

        d.      Subjecting Plaintiff to disparate treatment on the basis of her and/or disabilities and/or accommodation requests.

101.   Defendant took these retaliatory actions because Plaintiff requested a reasonable accommodation for her disabilities.

102.   Defendant's retaliatory actions were willful, deliberate, and intentional.

103.   The injuries to Plaintiff that arose as a consequence of Defendant's conduct were foreseeable and intentionally caused by Defendant.

104.   This retaliation would not have occurred had Plaintiff not engaged in protected activity under the ADA.

105.   As a direct and proximate result of Defendant's violation of the ADA, Plaintiff suffered economic damages including but not limited to loss of wages, benefits, back pay, front pay, and other expenses.

106.   As a direct and proximate result of Defendant's violation of ADA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

107.   As a direct, natural, proximate, and foreseeable result of the actions of Defendant, Plaintiff has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

108.   The conduct of Defendant was so willful and wanton and performed with malice or reckless indifference to the statutory rights of Plaintiff that it entitles her to an award of punitive damages against Defendant to deter them and others from such conduct in the future.

109.   Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to the ADA.

110.   Plaintiff, having been retaliated against by Defendant, has suffered irreparable harm for which there is no plain, adequate, or complete remedy at law.

## COUNT IV
## RETALIATION IN VIOLATION OF THE PDCRA

111.   Plaintiff realleges and adopts all pertinent parts of paragraphs 1-64 as if set forth herein.

112.   Plaintiff engaged in a protected activity when she requested a reasonable accommodation for her disabilities.

113.   Beginning shortly after Plaintiff's initial request for a reasonable accommodation for her disabilities and continuing until her termination, Defendant took adverse employment actions against Plaintiff, including but not limited to:

    a.    Discharging Plaintiff because of her disability and/or disabilities and/or requests for accommodation;

    b.    Denying employment opportunities to Plaintiff because of her and/or disabilities and/or requests for accommodation;

    c.    Denying Plaintiff's requests for accommodation; and/or

    d.    Subjecting Plaintiff to disparate treatment on the basis of her and/or disabilities and/or accommodation requests.

114.   Defendant took these retaliatory actions because Plaintiff requested a reasonable accommodation for her disabilities.

115.   Defendant's retaliatory actions were willful, deliberate, and intentional.

116.   The injuries to Plaintiff that arose as a consequence of Defendant's conduct were foreseeable and intentionally caused by Defendant.

117.   This retaliation would not have occurred had Plaintiff not engaged in protected activity under the PDCRA.

118.   As a direct and proximate result of Defendant's violation of the PDCRA, Plaintiff suffered economic damages including but not limited to loss of wages, loss of benefits, back pay, front pay, and other expenses.

119.   As a direct and proximate result of Defendant's violation of PDCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

120.   As a direct, natural, proximate, and foreseeable result of the actions of Defendant, Plaintiff has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

121.   The conduct of Defendant was so willful and wanton and performed with malice or reckless indifference to the statutory rights of Plaintiff that it entitles her to an award of punitive damages against Defendant to deter them and others from such conduct in the future.

122.   Plaintiff is entitled to recover reasonable attorney's fees and litigation expenses pursuant to the PDCRA.

123.   Plaintiff, having been retaliated against by Defendant, has suffered irreparable harm for which there is no plain, adequate, or complete remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, Willis prays for damages in an amount to be determined at trial, together with interest, cost of suit, attorney's fees, and all such other relief as the court deems proper, which include:

a.  Declare that the aforementioned practices and actions of Loomis constitute unlawful employment practices in violation of the ADA and the PDCRA;

b.  Award Willis all lost wages, past and future, and other monetary damages to which she is entitled, including interest under the ADA and the PDCRA;

c.  Award Willis compensatory damages under the ADA and the PDCRA;

d.  Award Willis punitive damages under the ADA;

e.  Award Willis reasonable attorney's fees, costs, and interest under the ADA and the PDCRA;

f.  Award Willis equitable relief including, but not limited to, an injunction directing Loomis to cease their discriminatory conduct and practices and injunctive relief directing Defendants to immediately provide all employees with a safe, non-discriminatory work environment under the ADA and the PDCRA; and

g.  Award Willis any other relief this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted: April 23, 2025.

By: /s/ *Warren D. Astbury*
**WARREN D. ASTBURY**
**ASTBURY LAW PLLC**
Michigan Bar # P82416
Attorney for Plaintiff
3910 Telegraph Road
Suite 204
Bloomfield Hills, MI 48302
Tel: (313) 701-2448
warren@astburylegal.com
*Attorney for Plaintiff*